HENRY E. SAYLOR *et al.* Appellants, *vs.* GEORGE C. DUEL *et al.* Appellees.

*Opinion filed October 26, 1908—Rehearing denied Dec. 3, 1908.*

1. LOCAL OPTION—*no appeal lies from the judgment of county court on contest of local option election.* Under section 19 of the Local Option act of 1907, providing for the contest of a local option election and providing that "the county court shall have final jurisdiction to hear and determine the merits of such cases," no appeal lies from the judgment of the county court in such cases.

2. CONSTITUTIONAL LAW—*section 19 of the Local Option act, making jurisdiction of county court final, is valid.* Section 19 of the Local Option act of 1907, in so far as it makes the jurisdiction of the county court final in a proceeding to contest a local option election, is not a denial of any right or privilege guaranteed by the Federal constitution, nor is it in violation of section 22 of article 4 of the Illinois constitution, prohibiting special legislation.

APPEAL from the County Court of DuPage county; the Hon. D. T. SMILEY, Judge, presiding.

HAIGHT & REUSS, and BOTSFORD, WAYNE & BOTSFORD, for appellants.

DAVID F. MATCHETT, and JOHN S. GOODWIN, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

At the election held in the city of Naperville, DuPage county, in April, 1908, the question was submitted to the voters of said city whether said city should become anti-saloon territory under the act of May 16, 1907, providing

for the creation, by popular vote, of anti-saloon territory, and for the abolition, by like means, of territory so created. The city of Naperville consists of three wards, each of which constitutes a voting precinct. The result of this election, as declared by the city council acting on the returns made by the election judges, was 408 votes against the proposition submitted and 467 in favor of the city becoming anti-saloon territory. Within less than ten days after the election Henry E. Saylor, Albert Pringnitz, Mathias W. Sander, Samuel Wehrli and Walter Weigand, legal voters of the city of Naperville, filed a bond for costs in the county court of DuPage county and a verified petition to contest the election upon the proposition submitted, on the following grounds: (1) Because of alleged fraudulent and illegal proclamations and returns in the first and third wards; (2) because of irregular and unlawful arrangement and construction of the polling places in said first and third wards; (3) because of the loss of one regular, officially endorsed ballot in the first ward; (4) because of the casting of illegal votes in favor of said proposition in the first and third wards, sufficient in number to change the result of the election in the city; (5) because of fraud and misfeasance of the election officers in said first and third wards. The city of Naperville, as a municipality, was not made a party defendant.

The prayer for process and answer to the petition is as follows: "That summons herein issue out of this court, addressed to George C. Duel, the city clerk of said city of Naperville, DuPage county, Illinois, notifying said city clerk of the filing of this petition, and directing him to appear in this court on behalf of said city of Naperville on the fifth day of May, A. D. 1908, at the hour of ten o'clock in the forenoon, in the county court room in the court house in the city of Wheaton, in the county of DuPage and State of Illinois, then and there to answer this petition, in conformity with the statutes in such case made and provided."

George C. Duel, city clerk of the city of Naperville, entered his appearance, as did eight other citizens and legal voters of said city, and filed a demurrer to the petition, setting out the following causes of demurrer: First, that neither the city of Naperville, DuPage county, Illinois, nor any other person, is made a defendant in or to the said petition; second, as to the matters and things contained in said bill wherein it is alleged that the polling places in the various precincts were not arranged in form as provided by law, the same and each and every one the allegations of said petition are wholly insufficient, because said petition does not allege that said illegal arrangement of the polling places resulted or in any manner tended to prevent a free and fair election as so arranged; third, because said petition is wholly insufficient to confer any jurisdiction on this court to grant the whole or any part of the relief prayed for by said petition. The county court sustained the demurrer and dismissed the petition, to which ruling of the court the petitioners duly excepted and prayed and obtained an appeal to this court. The errors assigned call in question the ruling of the court in sustaining the demurrer and dismissing the petition.

Section 19 of the act of 1907, under which this election was held, after providing for a contest of such election by five legal voters of any political division in which an election shall have been held as provided for in that act, provides: "The county court shall have final jurisdiction to hear and determine the merits of such cases." Under the language of this statute we are met with the question whether any appeal lies from the judgment of the county court to this court from a judgment rendered in a proceeding to contest an election held under the statute of 1907. This question is raised by appellees in their brief but is not discussed. It is discussed at some length by appellants in their reply brief. Since in our view this is a question of controlling importance, we regret that we have been com-

pelled to investigate it without any brief on one side and with but little assistance from the one filed by the other.

In this State the right of appeal in any case is purely statutory, with the possible exception of certain classes of cases enumerated in section 11 of article 6 of the constitution of 1870, in which the right of appeal from the Appellate to the Supreme Court in certain enumerated cases seems to be guaranteed by the constitution. Section 123 of chapter 46 of the Revised Statutes of 1905 provides for appeals to be taken to the Supreme Court from county and circuit courts in all contested election cases, "in the same manner and upon like conditions as is provided by law for taking appeals in cases in chancery from the circuit courts." There is no provision in the act under which this election was held, granting to either party a right of appeal. Appellants contend that an appeal lies under section 123 of the general Election law. Whether section 123 of the general Election law could be held to apply to an election held under this statute, in the absence of any provision in the law of 1907 in relation to such appeal, is not involved, since in our view the language already quoted from section 19 must be held to take elections held under said act out of the operation of said section 123. The provision that the county court shall have *"final jurisdiction"* to hear and determine the merits of such cases must, we think, be construed as a denial of the right to an appeal from the judgment of the county court in contests arising under this statute. Jurisdiction is the power vested by the law in a tribunal to hear and determine causes properly coming before such tribunal. Final means last; conclusive; pertaining to the end. (Bouvier's Law Dict.) By conferring upon the county court "final jurisdiction," the jurisdiction of all other courts subsequent to the determination in the county court is *ex vi termini* excluded.

The case of *Lampson* v. *Platt,* 1 Iowa, 556, is an authority for the construction which we place on this statute.

In that case section 12 of an act of the legislature of the
State of Iowa, under which the proceeding was had, pro-
vided: "That any person feeling aggrieved by the decision
of the county judge, under the ninth section of the act may
appeal therefrom to the district court of the proper county,
which shall have *final jurisdiction* over the matter and shall
make such decision in the premises as justice and equity
may require." An appeal was prosecuted from the district
court to the Supreme Court of Iowa, and in holding that
no appeal could be taken from the judgment of the district
court, the Supreme Court of Iowa, on page 558, uses this
language: "The language of the statute is not that such
district court shall have power, in such cases, to enter final
judgment, but it shall have final jurisdiction. If the term
'final judgment' had been used, the right to appeal, in view
of the general provisions of the code, could scarcely be
questioned. Between judgment and jurisdiction there is a
wide and clear distinction. The one is the decision of the
law given by the court as the result of proceedings therein
instituted; the other has reference to the power conferred
to take cognizance of and determine causes according to
law and carry the same into execution." That court, in
dismissing the appeal, made the further remark that "to
our minds the language of the law can scarcely admit of
two interpretations."

In *Coon* v. *Mason County*, 22 Ill. 666, this court con-
strued a provision in section 38 of chapter 93 of the Re-
vised Statutes of 1845, providing that "either party may
appeal to the circuit court, where, the case being fully heard,
such judgment or order shall be made thereon as the court
shall deem right and which shall be a final decision," as
conferring upon the circuit court the power to finally deter-
mine the cause. This court there said: "We are of the
opinion that the legislature intended to prohibit the prose-
cution of a writ of error as well as an appeal."

236—28

*Moore* v. *Mayfield,* 47 Ill. 167, was an election contest. The statute then in force provided that the contest should be heard, in the first instance, by three justices of the peace, and allowed an appeal from the decision of the three justices to the circuit court under a provision that "the decision of which court shall be final." (Rev. Stat. 1845, chap. 37, sec. 49.) It was there held that the judgment of the circuit court was final, and the writ of error was dismissed. See *Loomis* v. *Hodson,* 224 Ill. 147.

Appellants contend that to construe this act as denying an appeal would be to single out a contest of an election held under said act from a contest of an election held for any other purpose, and that to do so would render the act unconstitutional, as being contrary to the fourteenth amendment of the Federal constitution and in violation of section 22 of article 4 of the constitution of this State. The particular part of the fourteenth amendment of the Federal constitution which is supposed to be violated by the construction we have placed upon this statute reads as follows: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." Appellants have no privileges or immunities which are abridged by denying them a right of appeal in this case, nor are they deprived of life, liberty or property without due process of law. Even if it could be said that a proceeding to contest an election held for the purpose of determining whether a municipality should or should not become anti-saloon territory in some undefinable way involved the life, liberty or property of the particular citizens who, availing themselves of the statutory privilege, take the initiative in bringing about such contest, the fact that the legislature has seen proper to withhold the right of appeal would not be a deprivation of such constitutional

right without due process of law. "One hearing," the Supreme Court of the United States has said, "if ample before judgment, satisfies the demand of the constitution in this respect. * * * If a single hearing is not due process, doubling it will not make it so." (*Pittsburg, Cincinnati, Chicago and St. Louis Railway Co.* v. *Baccus,* 154 U. S. 421.) In the case above cited Mr. Justice Brewer uses language which seems to us applicable to the other contention of appellants in this case. On page 427 the learned justice said: "The power of a State to make classifications in judicial or administrative proceedings carries with it the right to make such a classification as will give to parties belonging to one class two hearings before their rights are finally determined, and to parties belonging to a different class only a single hearing."

The decision above cited appears to be a sufficient answer to appellants' views, not only as to the point made that the statute as thus construed violates the fourteenth amendment of the Federal constitution, but also as to the other contention, that the act is special legislation within the meaning of section 22 of article 4 of the constitution of Illinois. This court has held in many cases that it is not necessary that a law shall apply to all the people of the State under this clause of our constitution. Where a class is composed of persons possessing in common some disability, attribute or qualification, or are under some conditions marking them as proper objects in whom to vest the specific rights granted unto them, the legislature may pass a law applicable only to such class. (*Vogel* v. *Pekoc,* 157 Ill. 339.) A law is general, not because it embraces all of the governed, but because it may do so when they occupy the same position as those who are embraced in its terms. (*Hawthorn* v. *People,* 109 Ill. 302.) The legislature, in adopting the law granting the right to determine by vote whether a political subdivision shall become or shall continue to be anti-saloon territory, has seen proper to differ-

entiate, in several particulars, the procedure for contesting such elections from the corresponding provisions found in the general Election law. Thus, it is provided in section 117 of the general Election law that any five electors may contest an election upon any subject which may be by law submitted to a vote of the people of a county, upon filing a petition in the circuit court within thirty days after the result of the election shall be determined. In a contest, for instance, of an election for the removal of a county seat, any five electors may make such contest. In respect to the number and qualifications of those who may contest, this section is similar to section 19 of the act of 1907, but in other respects there are wide differences. Under the general Election law the contest is in the circuit court, while under the law of 1907 it is in the county court. Under the general law the petitioners have thirty days in which to file the petition, while under this special statute it must be filed in ten days; and under the general law the petitioners are not required to give a bond for costs, while under the new act a bond for costs must be filed by the petitioners before filing their petition. Besides these differences, the legislature, for reasons which it deemed sufficient, has seen proper to provide for appeals from decisions in all contested election cases under the general law, while as to contests of election under the law of 1907 it has conferred final jurisdiction upon the county court. In doing so the legislature has exercised its power to determine that special elections upon this particular subject shall constitute a special class, which are subject to all the provisions of the statute under which they are conducted. The act in question is not open to the constitutional objections urged against it.

There being no authority of law for taking an appeal in this case, the appeal must be dismissed.

*Appeal dismissed.*