(No. 25723.—

EVA MAYES *et al.* Appellees, *vs.* THE CITY OF ALBION.— (WILLIAM R. HAYMAN *et al.* Appellants.)

*Opinion filed October 15, 1940—Rehearing denied Dec. 10, 1940.*

606

LLOYD J. VOYLES, and P. J. KOLB, for appellants.

CONGER & ELLIOTT, for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

This is a direct appeal taken from a decree of the circuit court of Edwards county in an election contest. On April 18, 1939, in the regular city election in the city of Albion, Edwards county, there was submitted, as authorized by the Illinois Liquor Control act, the following proposition: "Shall the sale at retail of alcoholic liquors be prohibited in the city of Albion, Edwards county, Illinois?" The returns of this election as canvassed showed 480 votes cast for the proposition and 481 votes against it. Five electors of the city of Albion filed a contest in the circuit court in accordance with the provisions of the Elections act. (Ill. Rev. Stat. 1939, chap. 46, par. 120.) Certain appellants, as electors, were permitted to intervene to defend the contest. A motion to dismiss based upon the lack of jurisdiction upon the part of the circuit court was overruled. A hearing was had. The court determined there were 479 votes in favor of the proposition and 475 against it, and entered a decree declaring it carried. No explanation appears in the record of the difference in 7 votes between the canvass and the count in the contest, but no point is raised by either party as to this shortage. Of the ballots, 440 cast for the proposition and 437 against the proposition were unobjected to. The defendants objected to the action of the court in the counting of 39 ballots for the proposition, and the petitioner to 38 ballots against the proposition, all of which are certified to this court.

The first question to be determined is that of jurisdiction of the circuit court to entertain the contest. Section 117 of the Elections act, (Ill. Rev. Stat. 1939, chap. 46, par. 120,) as amended in 1921, provides that in the case of all public measures submitted to the voters of any city, village, incor-

porated town, county or sanitary district, or other municipal corporation, five electors may contest the result of such election by petition in the circuit or superior court. Under this section it has been held proper to contest the result of an election for a high school site, (*Smith* v. *Township High School District,* 335 Ill. 346) ; to determine whether a bond issue for a park district has carried, (*MacGuidwin* v. *The South Park Comrs.* 333 Ill. 58) ; to ascertain if the proper number of votes have been cast to reorganize a sanitary district, (*Bramstaedt* v. *Indian Boundary Sanitary District* 332 Ill. 339), and it has been recognized in a case involving a vote to increase the tax rate for schools. (*McCurdy* v. *Board of Education,* 359 Ill. 188.) It has also been held that under paragraph 120, *supra,* only the result of an election, as determined by a count of the ballots, and not the validity of an election may be contested. *Cipowski* v. *City of Calumet City,* 322 Ill. 575; *McCurdy* v. *Board of Education, supra; Heaney* v. *Northeast Park District,* 360 Ill. 254; *Kaufman* v. *Community High School District,* 365 id. 86.

Our attention has been called to *Saylor* v. *Duel,* 236 Ill. 429. In that case a proceeding was filed in the county court to contest the validity of an election under the Dram Shop act of 1907. Section 19 of that act provided that the validity of such election should be contested in the county court. The county court held the election valid, and the contestants attempted to appeal to the Supreme Court, under the Elections act (Ill. Rev. Stat. 1939, chap. 46, par. 126) which reads as follows: "In all cases of contested elections in the circuit courts or county courts appeals may be taken to the Supreme Court in the same manner and upon like conditions as is provided by law for taking appeals in other civil cases." The court construed the provision of section 17 of the Dram Shop act giving the court final jurisdiction as a denial of the right of an appeal from the county court. At the time of this decision (1908) there was no

provision in the statute authorizing a contest of the result of an election on public questions except in so far as it affected a whole county, and the right to contest public measures or questions arising in cities, towns, villages, etc., was not authorized until section 117 (par. 120) of the Elections act, *supra,* was amended in 1921. Laws of 1921, p. 428.

In *Saylor* v. *Duel, supra,* the validity of the election was involved, but the court did not determine what was included within the term "contest the validity of such election." Section 17 of the Dram Shop act of 1907 was reenacted in the same language in the Liquor Control act of 1934 (Ill. Rev. Stat. 1939, chap. 43, par. 182) at a time when there was an existing statute in effect providing that the result of an election on a public measure submitted to the people of any city, town, village, etc., might be contested.

The precise question involved in this case has not been passed upon by this court. Under the authorities, *supra,* if the petitioners had filed their contest in the county court they could only have raised the question of the validity of the election; likewise, if filed in the circuit court they can only question the result of the election. In view of the passage in 1921 of the amendment to section 117 (par. 120) of the Elections act we are of the opinion the legislature intended the result of all public measures submitted to a vote of the people might be determined under that section.

The purpose of an election contest is to ascertain how many votes were cast for or against a candidate, or for or against a measure, and thereby ascertain the will of the people. *Cipowski* v. *City of Calumet City, supra; County of Lawrence* v. *Schmaulhausen,* 123 Ill. 321; *Edgcomb* v. *Wylie,* 248 id. 602; *Dilcher* v. *Schorik,* 207 id. 528.

In *Harding* v. *Albert,* 373 Ill. 94, this court said: "The legislative policy of this State is to authorize election contests by electors residing in the district or subdivision affected by the election," and sets out section 117 (par. 120)

of the Elections act as establishing this policy. In line with this policy, the result of an election held to determine whether the retail sale of alcoholic liquors be prohibited in certain territory, held under the provisions of the Liquor Control act, may be determined by a proceeding under said paragraph 120 of the Elections act, while the validity of the election may only be tried as provided in paragraph 182 of the Liquor Control act. Since the petition alleged that the election was valid in all respects, but that the petitioners desired only to contest the result of the election by counting the votes, the circuit court had jurisdiction.

Appellants argue that the ballots were not properly preserved to authorize a recount. The evidence shows that on the night of the election the city clerk personally called for the ballots at one precinct and took them to his home. The ballots from the other two precincts had been delivered there a few minutes earlier by the election judges. The clerk and sheriff proceeded to the court house and placed them in the sheriff's safe. Two days later they were taken to the jail and locked in a vacant cell until they were impounded and delivered to the circuit clerk. Every person who had custody of the ballots at any time was called to the witness stand and testified there had been no tampering, or opportunity for tampering with the ballots, and that the ballots were in the same condition when they left their hands as when they were received. They were strung and sealed in bags, and the bags and seals were inspected by the court before opening. The question as to whether the ballots have been properly preserved is one of fact to be determined by the court in each case. (*Rogers* v. *Meade,* 363 Ill. 630; *Sibley* v. *Staiger,* 347 id. 288.) The statute is silent as to the place and particular manner in which election ballots shall be kept. (*Alexander* v. *Shaw,* 344 Ill. 389.) Under the evidence, we do not believe the action of the circuit court in overruling appellant's objections should be disturbed.

The public question involved in this case was submitted at a regular city election. This election was governed by the so-called "Australian Ballot act." (Ill. Rev. Stat. 1939, chap. 46, par. 288.) The Illinois Liquor Control act provides that the question may be submitted at such an election. Where a public question is submitted at such an election by a separate ballot all of the provisions of the Australian Ballot act shall apply to such separate ballot. (Ill. Rev. Stat. 1939, chap. 46, par. 305; *County of Union* v. *Ussery*, 147 Ill. 204.) The validity of the contested ballots should, therefore, be determined by such law.

The only remaining question to be determined is the propriety of the court's ruling on the 77 ballots objected to and certified to this court. The form of the ballot at said election was as follows:

| Shall the sale at retail of alcoholic liquor be prohibited in the City of Albion, Edwards County, Illinois? | YES | |
| --- | --- | --- |
| | NO | |

Considering first the objections to the 39 ballots in favor of the proposition: Four ballots (defendants' exhibits 1, 16, 17 and 22) were not initialed. They were not legal ballots and they should not have been counted. (*Boland* v. *City of LaSalle*, 370 Ill. 387; *Sibley* v. *Staiger, supra.*) Ten ballots (defendant's exhibits 3, 6, 12, 15, 20, 21, 31, 32, 36 and 37) did not have a cross in the square following the word "Yes," but did have a cross in the square and over the word "Yes;" these ballots were bad and should not have been counted. (*Boland* v. *City of LaSalle, supra.*) Ten ballots (defendants' exhibits 7, 8, 19, 24, 26, 29, 34, 35, 38 and 39) contain no cross in either square, but have the word "Yes" written in the square opposite the printed word "Yes;" these ballots were bad and should not have

been counted. (*Boland* v. *City of LaSalle, supra.*) Seven ballots (defendants' exhibits 2, 4, 10, 11, 13, 14 and 18) were objected to because the crosses in the square opposite the word "Yes" were irregularly shaped, and in some instances looked as though the pencil had run over the same line twice, and some where the cross lines were somewhat curved instead of being straight; however, all of these ballots show a distinct crossing of the lines within the proper square; they were properly counted for the proposition. (*Boland* v. *City of LaSalle, supra.*) Two ballots (defendants' exhibits 25 and 33) were claimed to bear distinguishing marks; exhibit 25 had the cross in the proper place but evidently the voter started to mark in the square over the word "Yes" and made on horizontal line before he thought to properly mark the cross opposite the word "Yes;" the unerased line is the feature objected to; exhibit 33 was properly marked with a cross opposite the word "Yes" but contained a little irregular mark as though the pencil had touched the paper before the voter started to make the cross. In *Boland* v. *City of LaSalle, supra,* this court said: "Nor is every pencil scratch or marking on the ballot, in addition to that required to indicate the voter's choice, necessarily a distinguishing mark, even where obviously made by the voter himself. * * * Whether a given marking is a distinguishing mark is largely a question of fact to be determined from an inspection of the original ballot." Our inspection of these two ballots leads us to conclude these marks were put upon the ballots accidentally, probably by the voter. As it is impossible to give them any other significance from anything appearing in the evidence they were properly counted for the proposition. Four ballots (defendant's exhibits 9, 27, 28 and 30) were objected to because of claimed irregularities appearing in the initials of the judge upon the back of the ballot. Exhibit 9 is said to be obscure, and close inspection shows the initials "BJG" clearly appear, which were the initials of one of the election

judges of that precinct. Exhibits 28 and 29 had a slight vertical line following the initials to which no significance is claimed by either side. Exhibit 30 apparently was initialed twice by the same judge and one set of initials erased but still faintly legible. No question is raised but that the initials are genuine, and those of one of the judges of election. We conclude these ballots were properly counted for the proposition.

Referring now to the 38 ballots against adopting the proposition, objected to by petitioners, we find that 21 ballots (petitioner's exhibits 1, 2, 6, 7, 9, 10, 11, 14, 15, 17, 18, 19, 21, 23, 24, 25, 26, 27, 28, 29 and 32) did not bear the initial of a judge of the election. Two ballots (petitioner's exhibits 3 and 4) did not contain a cross in the square opposite the word "No" but the cross was over the printed word "No." Nine ballots (petitioners' exhibits 20, 22, 30, 31, 33, 34, 36, 37 and 38) were not marked anywhere with a cross, but contained the word "No" written in the vacant square opposite the printed word "No." Under the authorities heretofore cited these 32 ballots were illegal, and should not have been counted by the court as legal votes against the proposition. Four ballots (petitioners' exhibits 5, 12, 16 and 35)· were objected to because the crosses were in the square following the word "No" and were claimed to be irregular. Ballot No. 5 contained a cross opposite the word "No"; it also contained a cross opposite the word "Yes", with three short lines drawn through the cross horizontally. It left the mark of such a character that, if standing alone, it could have been counted "Yes." It, therefore, nullified the cross in the other square, and should not have been counted. (*Winn* v. *Blackman*, 229 Ill. 198.) The other 3 ballots under this designation all had distinct cross lines within the square and were properly counted against the proposition. There remain 4 ballots which are substantially alike, 2 for the proposition and 2 against it. Defendants' exhibits 5 and 23 each bear a cross in the proper

square, and also the word "Yes" written in the same square with the cross. Petitioners' exhibit 13 is exactly like this except on the "No" side of the ballot; and petitioners' exhibit 8 contains a cross in the proper square with the word "No" written over the printed word "No." All four of these ballots contain a cross in the proper place, and the additional words merely emphasize the intention of the voter. While the precise manner of marking the ballot was not involved we believe the reasoning of *Winn* v. *Blackman, supra,* and *Neff* v. *George,* 364 Ill. 306, justifies the court in counting these 4 ballots.

Out of the 39 contested ballots in favor of the proposition, only 15 should have been counted, which, with the unobjected-to ballots, makes a total of 455 ballots in favor of the proposition. Out of the 38 contested ballots against the proposition, only 5 should have been counted, which, with the 437 unobjected-to ballots, brings a total of 442 votes against the proposition. The proposition, therefore, carried by 13 votes, and the decree of the circuit court is, accordingly, affirmed.

*Decree affirmed.*