WILLIAM A. HOFFER *et al.*, Petitioners-Appellees, v. SCHOOL DISTRICT U-46 *et al.*, Respondents-Appellees (Cassandra Skidmore, Intervenor-Appellant).

Second District    No. 2—94—1126

Opinion filed June 14, 1995.

Paul A. Lewis and Lisa M. Nyuli, both of Lewis & Nyuli, P.C., of Aurora, for appellant.

Alfred Y. Kirkland, Jr., of Brady, McQueen, Martin, Collins & Jensen, of Elgin, for appellee William Hoffer.

Fay Hartog-Rapp, of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellee School District U-46.

David R. Akemann, State's Attorney, of St. Charles (Patricia Johnson Lord and Donald B. Leist, Assistant State's Attorneys, of counsel), for appellee Lorraine Sava.

Jack O'Malley, State's Attorney, of Chicago (Patricia M. Shymanski, Patricia M. Moser, and Sarah E. Wyton, Assistant State's Attorneys, of counsel), for appellee David Orr.

Michael C. Wiedel, of Hultquist, Wiedel, Hudzik & Russ, P.C., of Downers Grove, for appellee Du Page County Board of Election Commissioners.

JUSTICE THOMAS delivered the opinion of the court:

The petitioners, 15 registered voters residing within the boundaries of school district U-46, filed this action pursuant to the Election Code (10 ILCS 5/1—1 et seq. (West 1992)) seeking a recount and reversal of the result of a referendum at which a proposed increase in the allowable tax rate for school district U-46 was defeated by a margin of 22 votes. Cassandra Skidmore intervened in the action and filed a motion to dismiss the petition. Skidmore's motion was denied, and a recount was granted of certain precincts listed in the petitioners' petition. Following the recount, the trial court reversed the original election results and found that the referendum had passed by a majority of 18 "yes" votes. Skidmore then filed a counterpetition requesting a recount of additional precincts within the voting district. The trial court allowed the second recount and found that the refer-

endum had passed by a majority of 3.02 "yes" votes. Skidmore appeals.

The record reveals that school district U-46 is comprised of 123 precincts spread across Cook, Du Page and Kane Counties. The district's board of education placed the following referendum on the ballot at the general primary election held on March 15, 1994:

"Shall the Board of Education of District U-46 *** be authorized to increase the tax rate for educational purposes to 4.00% (percent) upon all taxable property in the district, as equalized or assessed, from the current authorized rate of 3.22% (percent)?"

The result certified by the canvassing board showed that the proposition failed by a slim margin of 22 votes, 15,290 "no" votes to 15,268 "yes" votes. Thereafter, the petitioners filed a verified petition contesting the election result and requesting a recount of 46 of the 123 precincts. The petition specified various mistakes, irregularities or discrepancies, which would either increase the number of "yes" votes or decrease the number of "no" votes. Specifically, the categories of alleged mistakes or irregularities consisted of: 62 uninitialed "no" ballots; miscounting in various precincts which if corrected would amount to a gain of 11 "yes" votes; 10 uncounted "hanging chad" ballots (ballots where square indicating choice was only partially punctured); 49 "no" ballots with extraneous markings; and one "no" ballot voted in the wrong precinct.

Skidmore filed a petition to intervene, which was granted. Skidmore then filed a motion to dismiss the recount petition contending that the petition alleged only random errors rather than fraud, and it was fatally defective in accounting for a relative increase in the "yes" votes without alleging facts foreclosing an offsetting relative increase in "no" votes if a full recount was done. The trial court denied Skidmore's motion and found that there was a reasonable likelihood that the recount would change the results of the election. Thereafter, recounts of the specified precincts were conducted on May 11, 1994, in the Du Page County precincts, on May 16, 1994, in the Kane County precincts, and on May 17, 1994, in the Cook County precincts.

A hearing was held on May 28, 1994, at which the actual ballots were introduced into evidence and various witnesses testified about election materials and the chain of custody of those materials. Various items were introduced into evidence, including ballot transfer cases, original computer tabulations from March 15, 1994, individual ballots from each county variously alleged by the parties to be uninitialed, extraneously marked ballots, and uncounted "hanging chad" ballots.

On June 9, 1994, the trial court entered an order finding that the recount showed a majority of 18 "yes" votes, rather than a majority of 22 "no" votes found by the original canvass. In so doing, the court found that all ballots had been properly preserved and that there was no fraud shown in the count of the election. The court allowed to be counted all the contested ballots with extraneous markings since there was no showing that the markings were made by the voter with the intention of identifying an individual ballot as would be required to disqualify the ballot. The court also ruled that it would refuse to count the absentee ballots of Christopher Warwick and Herman Rodriguez.

Thereafter, Skidmore filed a counterpetition seeking a recount of substantially all of the precincts in Du Page and Kane Counties which had not been included in the first recount filed by the petitioners. The petitioners filed a motion to dismiss the Skidmore counterpetition arguing that it was fatally defective in that it did not allege enough specific irregularities to satisfy the statutory standard of a "reasonable likelihood" of reversal of the election if the remaining precincts were counted. The petitioners also alleged that the trial court lacked jurisdiction to entertain the counterpetition because it was not filed by at least five voters and it was not timely. The trial court found that it had jurisdiction over the petition and that the allegations of the petition were sufficient to indicate that there was a reasonable likelihood that the recount would change the result of the election. Accordingly, the trial court ordered a recount of the remaining precincts listed in the counterpetition.

At the hearing following the recount, Du Page County supervisor of elections James Tamm and Kane County clerk Lorraine Sava testified about election procedure and the preservation of ballots and ballot material. Additionally, election judges Martha Anderson, Thomas Tamraz and Gertrude Brieschke testified about election procedure in Wayne precinct 30 of Du Page County, and in particular about 12 uninitialed absentee ballots cast in that precinct. Warwick and Rodriguez were also called to testify about the circumstances surrounding the casting of their absentee ballots.

After the hearing, the trial court entered an order finding that the combined results of the first and second recount showed a majority of 3.02 "yes" votes. The court noted that there was a difference between the number of ballots issued and cast and the number of ballots found at the recount in several precincts. As a result, the court made a fractional, *pro rata* adjustment to the total based on the applicable ratio of counted ballots for or against the measure in a given precinct. (See *Boland v. City of La Salle* (1938), 370 Ill. 387,

396-98.) The court found that a fractional adjustment of 2.51 "yes" votes and .49 "no" votes should be made. The court reconsidered its earlier decision with respect to the Warwick and Rodriguez ballots, and, after reviewing all the evidence, it concluded that they should be counted as two "yes" votes. The court further found that a group of 29 uninitialed ballots (22 "yes" votes and 7 "no" votes) found in exhibits L2 and M2 could not be counted. The court ruled that 12 uninitialed ballots (exhibit M5) in Wayne precinct were absentee ballots and should be counted as 10 "yes" votes and 2 "no" votes. Finally, the court made some additional findings regarding extraneous markings, hanging chads, and other issues.

On appeal, Skidmore first argues that the trial court exceeded its authority in reversing the initial result of the election. Citing section 23—26 of the Election Code, she contends that the court could not simply reverse the result of the election in favor of the side with the most votes, but instead must declare the election a nullity.

■ We disagree. Section 23—24 of the Election Code provides that with respect to a "public question" referendum "any 5 electors of the State, or of the political subdivision or district, respectively, may contest the results of any such election" (10 ILCS 5/23—24 (West 1992)). The purpose of an election contest is to ascertain how many votes were cast for or against a measure and thereby ascertain the will of the people. *Mayes v. City of Albion* (1940), 374 Ill. 605, 609.

In *Mayes*, the referendum at issue related to the sale of alcoholic beverages. The result as canvassed showed that the proposition was defeated. Upon recount, however, the trial court determined that the measure had passed. On appeal, the supreme court affirmed the trial court's order which had changed the initial canvassed result of the election.

■ Section 23—26 of the Election Code provides:
"The judgment of the court in cases of contested election, shall confirm or annul the election *according to the right of the matter*; or, in case the contest is in relation to the election of some person to an office, shall declare as elected the person who shall appear to be duly elected." (Emphasis added.) (10 ILCS 5/23—26 (West 1992).)
A statute will not be construed to effect a change in the settled law of the State unless its terms clearly require such a construction. (*In re Contest of the Election for the Offices of Governor & Lieutenant Governor Held at the General Election on November 2, 1982* (1983), 93 Ill. 2d 463, 483.) Moreover, a statute will not be construed so as to make language meaningless or superfluous. *Maske v. Kane County Officers Electoral Board* (1992), 234 Ill. App. 3d 508, 512.

Here, the statute plainly gives the court the authority to confirm the election "according to the right of the matter." In the instant case, as in *Mayes*, the court confirmed the election according to the right of the matter by examining the ballots on recount and declaring the lawful result. The interpretation of section 23—26 urged by Skidmore would render meaningless the words "according to the right of the matter." We find that the appropriate construction of the statute is that the court has the authority to determine the lawful result of the election and enter a judgment in accordance with that determination.

Skidmore next argues that the trial court erred in granting the first recount. Citing *In re Contest* (93 Ill. 2d 463), and *Zahray v. Emricson* (1962), 25 Ill. 2d 121, she contends that the petition for recount was insufficient because it did not contain a positive and clear assertion that the recount would change the result of the election.

●3 Initially, we note that section 23—1.3a(d) of the Election Code provides that an election contest petition shall contain a statement that each petitioner believes that mistake or fraud has been committed in the casting, counting or return or canvass of the votes for the office involved, or there was some other irregularity in the conduct of the election. (10 ILCS 5/23—1.3a(d) (West 1992).) Additionally, a statement must be made declaring with particularity the specific precincts in which the mistake, fraud, or irregularity has occurred and that as a consequence the result of the election as officially proclaimed was incorrect. 10 ILCS 5/23—1.3a(e), (g) (West 1992).

■ *In re Contest* involved a statewide election contest for the offices of governor and lieutenant governor in which the court found the petitioner's petition insufficient to maintain an election contest. There, the court found that the strict pleading requirement of *Zahray* should be applied to the petition. Quoting from *Zahray*, the court stated the following about the sufficiency of the allegations in an election contest case:

> " '[T]he proceeding cannot be employed to allow a party, on mere suspicion, to have the ballots opened and subjected to scrutiny to find evidence upon which to make a tangible charge. [Citations.] And while the pleadings in contest proceedings are not required to comply with the strict technical rules applicable in civil actions, there should be such strictness as will prevent the setting aside of the acts of sworn officials without adequate and well defined cause. [Citations.] *Stated otherwise, there should be no reason for a recount of the votes unless there is a positive and clear assertion, allegation or claim that such a recount will change the result of the election.*' " (Emphasis in original.) *In re Contest*, 93 Ill. 2d at 478, quoting *Zahray*, 25 Ill. 2d at 124.

Since the *In re Contest* case was decided, section 23—23.2 (10 ILCS 5/23—23.2 (West 1992)) was added to the Election Code. That section provides that a court hearing an election contest shall grant a petition for recount properly filed where, based on the facts alleged in such petition, there appears a reasonable likelihood the recount will change the results of the election. (10 ILCS 5/23—23.2 (West 1992).) It is well settled that a statute should not be construed to effect a change in the settled law of the State unless its terms clearly require such a construction. (*In re Contest*, 93 Ill. 2d at 483.) We find that section 23—23.2 does not contravene the pleading requirements as announced in *Zahray* and *In re Contest*. Accordingly, we find that it is incumbent on a petitioner in an election contest to plead specific facts indicating that the result of the election would be changed.

Specifically, Skidmore argues that the petition was defective because: (1) there were no facts showing whether the errors alleged were cumulative; (2) there were no facts showing that extraneous markings would disqualify ballots; and (3) there were no facts foreclosing the possibility that equal errors could be found for the opposing side.

■ We find that Skidmore's challenge to the complaint must fail. The number of uninitialed "no" ballots alleged in the petition was sufficient to change the result of the election. Thus, there was no risk that the petition was based on "cumulative or overlapping" claims as to the same ballot, or extraneous markings that did not serve to disqualify ballots.

Furthermore, we do not interpret *In re Contest* as requiring the petitioners to allege facts foreclosing the possibility of equal errors for the opposing side. The problem in that case was that the petitioners could not overcome the Thomas and Ryan plurality of 5,074 votes because the well-pleaded allegations of error only showed a net decrease in the Thomas-Ryan vote of 2,651. In contrast, the 62 uninitialed "no" ballots in the case *sub judice* were sufficient to change the result of the election. It was not incumbent upon the petitioners to foreclose the possibility of a similar amount of uninitialed "yes" ballots. The statute only requires the petitioner to allege specific defects in the specific precincts where the error occurred. (10 ILCS 5/23—1.3a(e) (West 1992).) There is a presumption that uninitialed ballots are not legally cast and should not be counted. (*McDunn v. Williams* (1993), 156 Ill. 2d 288, 318.) It is also presumed that election judges performed their statutory duties and initialed ballots and that uninitialed ballots were not legally cast. (*McDunn*, 156 Ill. 2d at 318.) Accepting Skidmore's argument that other uninitialed ballots could be found which were erroneously counted would involve a presumption which the law does not allow.

Skidmore next argues that the ballot materials in Cook County were not properly preserved. She contends that the petitioners failed to show that the ballots were preserved in their original condition from the time of the election until the recount.

■ In *Pullen v. Mulligan* (1990), 138 Ill. 2d 21, the Illinois Supreme Court noted:

"The question of whether the ballots have been properly preserved is a question of fact to be determined from the evidence. The contestant may satisfy her burden of proof by introducing evidence that the election officials preserved the ballots according to the statutory requirements. Even where the statutory provisions are not complied with, however, the contestant may nevertheless prevail, since the preservation requirements are directory only. [Citation.] Once the trial court receives the ballots into evidence for consideration, the rules regarding ballot preservation cease, and the sole question before the court becomes whether those ballots are legal or illegal." *Pullen*, 138 Ill. 2d at 73.

■ Here, Skidmore did not object to the introduction of the ballots into evidence. Once the ballots were introduced into evidence without objection, the rules regarding ballot preservation were not at issue in the case. We further note that Skidmore does not claim that the election officials failed to preserve the ballots according to any statutory requirements. Under the circumstances, we find that Skidmore is precluded from raising an issue on appeal with respect to ballot preservation, and the only question properly before this court with respect to the ballots is whether they are legal or illegal, *e.g.*, whether they were initialed by an election judge and validly cast.

Skidmore erroneously relies on *Wood v. Hartman* (1942), 381 Ill. 474, for the proposition that an objection to the preservation of the ballots was not required to preserve the issue for review. In *Wood*, the defect complained of was not a lack of proper foundation as to the chain of custody of the ballots. Rather, the defect was the lack of initials on the ballots. The court found that it would consider whether the ballots were legal or illegal regardless of whether an objection had been made. This is consistent with *Pullen*, which provides that once ballots are introduced into evidence without objection the sole question before the court becomes whether the ballots are legal or illegal.

Next, Skidmore raises a number of contentions with respect to the second recount. First, Skidmore argues that the trial court erroneously applied a different standard in the first recount in the Cook County precincts than it did in the second recount in the Du Page and Kane County precincts. Second, she claims that the trial court

erred in deciding to count the absentee ballots of Warwick and Rodriguez. Third, she contends the court erred in counting, as absentee ballots, 12 uninitialed ballots from Wayne precinct in Du Page County.

In response, the petitioners argue *inter alia* that the trial court should have dismissed Skidmore's petition for recount. They contend that it was jurisdictionally and fatally defective in that it failed to allege specific defects from which it could be inferred that there was a reasonable likelihood that a second recount would change the result as found by the court after the first recount.

■ Courts have no inherent power to hear election contests, but may do so only when authorized by statute and in the manner dictated by statute. (*Pullen*, 138 Ill. 2d at 32.) Thus, before a court has jurisdiction and authority to act under the statute, a petition sufficient to trigger the statute must be filed. (*In re Contest*, 93 Ill. 2d at 474.) The petition required by the statute must contain all the statements which the statute says the petition shall state, and if the petition fails to contain all these essential elements, the court is without jurisdiction. *In re Contest*, 93 Ill. 2d at 474.

We have already set forth the standards enunciated in the statutory scheme and case law by which the adequacy of a petition must be judged. Again, we note that the statute requires that the petition contain a statement declaring with particularity the specific precincts in which the mistake or irregularity occurred and that as a consequence the result of the election as officially proclaimed was incorrect. (10 ILCS 5/23—1.3a(e), (g) (West 1992).) We find that this standard was applicable to Skidmore's counterpetition for recount. Thus, we conclude that it was incumbent on her to allege specific defects from which it could be inferred that there was a reasonable likelihood that the result of the election would be changed. As we previously indicated, we interpret this standard to mean that, at a minimum, the specific irregularities alleged in the petition would be sufficient to change the result.

Here, Skidmore's petition made specific allegations concerning four precincts. Specifically, she alleged the existence of 10 uninitialed "yes" votes. Proof of all the specific irregularities alleged in her petition would not have changed the result of the election and she did not allege that it would have. It is ironic that Skidmore maintained that the opposing parties' petition required a clear assertion that the result of the election would be changed and then failed to include such an assertion in her own petition.

■ Instead, she alleged that it could be expected that a recount would yield a net change in her favor of one vote per precinct.

However, the statute does not permit such a projection but requires that the petition allege the specific precincts wherein the irregularities relied upon were believed to have occurred. (See *In re Contest*, 93 Ill. 2d at 490.) Accordingly, we find that Skidmore's petition was insufficient and should have been dismissed. Nonetheless, we note that the trial court ultimately found that the measure had passed after each of the recounts. Since the trial court's decision can be affirmed on any basis appearing in the record (see *McDermott v. Metropolitan Sanitary District* (1992), 240 Ill. App. 3d 1, 28), we affirm the result reached by the court. Our resolution of the above-mentioned issues renders moot the remaining contentions raised by the parties.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

GEIGER and DOYLE, JJ., concur.