(No. 33210.—)

THE PEOPLE *ex rel.* Arthur L. Schlaman, Appellee, *vs.* THE ELECTORAL BOARD OF THE COUNTY OF COOK *et al.,* Appellants.

*Opinion filed November 18, 1954—Rehearing denied Jan. 18, 1955.*

JOHN GUTKNECHT, State's Attorney, GLENN W. Mc-GEE, JR., BELL, BOYD, MARSHALL & LLOYD, and KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, all of Chicago, (KENNETH McCRACKEN, WILLIAM WILSON, GORDON NASH, JAMES C. MURRAY, and ROBERT G. MACKEY, of counsel,) for appellants.

DANIEL D. GLASSER, of Chicago, for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

On January 18, 1954, petitions for nomination were filed by Terrel E. Clarke with the county clerk of Cook County in order that his name might appear on the Republican ballot as a candidate for township committeeman, Lyons Township, Cook County, at the primary election to be held April 13, 1954. Arthur L. Schlaman, plaintiff-appellee, hereinafter called plaintiff, describing himself as a duly qualified elector and Republican primary voter, resident and taxpayer of the said township, filed objections

with the county clerk alleging that the petitions for nomination contained an inadequate number of signatures and were otherwise defective.

Thereafter, on February 11, 1954, the Electoral Board of Cook County, whose members are appellants herein individually and as members of the board, held a hearing on said objections pursuant to the provisions of sections 7-13 and 10-10 of the Election Code. ' (Ill. Rev. Stat. 1953, chap. 46, pars. 7-13 and 10-10.) At this hearing, the record of which is not incorporated in the record here, plaintiff apparently urged as his only objection the question of whether the nomination petitions contained the requisite number of signatures.

The electoral board, according to allegations admitted in the pleadings herein, determined that the petitions were proper and certified its decision to the county clerk, thereby directing that the name of Clarke should be printed on the ballot for the April 13th primary election.

Plaintiff, describing himself as above indicated, on February 16, 1954, filed a petition for a writ of *mandamus* in the circuit court of Cook County requesting that Clarke's name be deleted from the ballot. Clarke and the members of the electoral board, in their official and individual capacities, were made defendants in the *mandamus* proceeding. Clarke filed an answer, and the electoral board member defendants filed a motion to dismiss the petition. The substance of these pleadings will be stated later in this opinion.

The petition for a writ of *mandamus* was later amended to include counts for declaratory judgment. The petition as amended, an answer by Clarke, and a motion to dismiss on behalf of the electoral board constitute the pleadings in this case. No evidence was heard by the circuit court, but upon the basis of these pleadings said court entered an order declaring the nomination petitions invalid and void *ab initio* for want of a sufficient number of signatures of

Republican primary electors. The order further declared that it was "the duty of the board of election commissioners to strike the petition from its files" and that the county clerk "should not print the name of Terrel E. Clarke on the official ballot."

An appeal has been perfected to this court pursuant to the authority of section 75 of the Civil Practice Act (Ill. Rev. Stat. 1953, chap. 110, par. 199,) because the case involves the elective franchise. This court, on application of the appellants, granted *supersedeas,* the effect of which was to allow the name of Clarke to appear on the ballot. A motion to dismiss the appeal on grounds that the elective francise is not involved was denied by this court on March 18, 1954. In connection with this denial of the motion to dismiss see *Progressive Party* v. *Flynn,* 401 Ill. 573, and *United States* v. *Hrasky,* 240 Ill. 560.

The amended petition alleged that Clarke's petitions contained 827 signatures, that the county clerk had compiled and published an "Election Calendar" which stated that 997 signatures were required, and that the petitions were not in conformity with section 7-10 of the Election Code. (Ill. Rev. Stat. 1953, chap. 46, par. 7-10.) It was further alleged that the action of the electoral board in overruling the objections to the petitions was arbitrary, capricious, and an abuse of the power vested in the electoral board. The answer of Clarke admitted the allegation of the number of signatures, denied the allegation as to arbitrary and capricious conduct and stated that Clarke was without knowledge sufficient to form a belief as to the allegation regarding the election calendar.

The answer, further, by way of affirmative defenses asserted that the action of the electoral board was final by express provision of the Election Code and that the relief sought could not be granted in a *mandamus* or declaratory judgment action.

The motion of the members of the electoral board to dismiss the petition asserted that there was no showing that the nomination petitions were unlawful and that the court lacked jurisdiction. Other grounds were asserted, which are not material to this decision.

Section 7-10 of the Election Code provides that petitions for nomination of a candidate for township committeeman shall be signed by "not less than five per cent nor more than eight per cent of the primary electors of his party in his township." The number of primary electors is to be determined by taking the total vote for the candidate of that political party who received the highest number of votes in the township at the last general or municipal election within the same.

Section 7-4 of the Election Code incorporates the definitions set forth in section 1-3 of the Code except that the terms "election," "general election," or "municipal elections" are not to include a primary nor are they to include an election in which judges exclusively are elected. In considering the legislative history of this provision, we have held that the purpose thereof was to prevent a political party from being disqualified because of failure to name candidates for judges in certain instances. *Progressive Party* v. *Flynn,* 400 Ill. 102.

Other provisions of the Election Code provide for the form of nominating petitions, the time for the filing of the same, and the time for filing objections thereto, as well as for hearings on the objections. Section 10-10, made applicable to this case by appropriate reference, provides that the electoral board shall decide whether the nomination papers are valid or whether the objections should be sustained. By the terms of this section the decision of a majority of the electoral board "shall be final."

In construing identical language in *People ex rel. Murray* v. *Rose,* 211 Ill. 249, we held: "The legislature, by

the act named, has created a special forum or court to which such matters are referable, and that body has seen fit to declare by statute that the decision of the body there provided for shall in such matters be final. * * * It is purely a statutory proceeding relative to a purely political question, with which this court interferes on very rare occasions, and it is the opinion of this court that there is nothing presented by this petition which it is authorized to take cognizance of or pass upon; that the judgment of the proper tribunal has been invoked and has been received, and although it may be contrary to the law, as contended by the relators, that does not at all interfere with the jurisdiction of the body that tried it, and does not authorize us, in a proceeding for *mandamus,* to review the action of such tribunal, nor will that authorize us to ignore that action and take it as a matter of original jurisdiction here, and, notwithstanding the provisions of the statute making the decision of such tribunal final, determine for ourselves who is entitled to the nomination."

Likewise, we have held that a court of equity will not use its injunctive powers to interfere in any manner with the freedom of elections, for the reason that elections involve political and not civil rights. *Payne* v. *Emmerson,* 290 Ill. 490.

The fact that the office herein involved is one in a political party and not a public or governmental office does not change the character or nature of this proceeding. (*People* v. *Brady,* 302 Ill. 576.) This case basically is an effort to invoke the jurisdiction of the courts to interfere in the orderly election process and upon a matter in which the legislature has determined that the decision of an electoral board, created for that specific purpose, shall be final.

The plaintiff did not allege any facts tending to show that the electoral board acted as a matter of whim or in a fraudulent or arbitrary manner. The only substantive

allegation that may be said to relate to a charge of arbitrary conduct was that the electoral board held these petitions to be valid when they contained 827 signatures. However, the plaintiff nowhere alleged what was a sufficient number, stating only that the clerk's election calendar listed 997 signatures as necessary. The decision that the electoral board had to make on these petitions pertained to the sufficiency of the number of signatures. In order to ascertain what number of signatures would be required, the board first had to determine whether the election of 1952 or the judicial election of 1953, at which judges were elected and a proposition was likewise submitted to the electors, should govern. This was the duty and function of the electoral board and not of the county clerk, whose duties in regard to the filing of nomination petitions are wholly ministerial.

A clearly fraudulent decision by the electoral board based upon an abuse of discretion could conceivably result in a seizure of the control of political machinery and an effective disenfranchisement of voters or candidates. In such instance it may be that relief could be had in the courts. This is not such a case, however, and considering the plaintiff's allegations we are of the opinion, in view of section 10-10 of the Election Code, that the decision of the electoral board is final. Therefore, the circuit court of Cook County did not have jurisdiction to grant the requested relief, and it committed error in purporting to do so.

Since we believe the case must be reversed by reason of the circuit court not having jurisdiction to grant the requested relief, it is not necessary to pass upon any other questions which might properly be raised had our decision in this regard been otherwise.

*Order reversed.*