# Illinois Official Reports

## Appellate Court

---

### *Harned v. Evanston Municipal Officers Electoral Board*,
### 2020 IL App (1st) 200314

---

| | |
|---|---|
| Appellate Court Caption | ALLISON HARNED, Plaintiff-Appellant, v. EVANSTON MUNICIPAL OFFICERS ELECTORAL BOARD; Its Members, in Their Official Capacities, STEVE HAGERTY, DEVON REID, and ANN RAINEY; and Objectors JANE GROVER, KENT SWANSON, and BETTY HAYFORD, Defendants-Appellees. |
| District & No. | First District, Sixth Division<br>No. 1-20-0314 |
| Filed | March 11, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2020-COEL-000005; the Hon. Maureen Ward Kirby, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Pat Quinn and John W. Mauck, both of Chicago, for appellant.<br><br>Keri-Lyn J. Krafthefer and Daniel J. Bolin, of Ancel Glink, P.C., of Chicago, for appellees Evanston Municipal Officers Electoral Board, Steve Hagerty, Devon Reid, and Ann Rainey.<br><br>Peter M. Friedman, Hart M. Passman, and Jeffrey N. Monteleone, of Elrod Friedman LLP, of Chicago, for other appellees. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices Connors and Pierce concurred in the judgment and opinion.


**OPINION**

¶ 1     In this appeal, petitioner Allison Harned asks us to reverse the decision of the Evanston Electoral Board (the board), striking a proposed referendum from the March 17, 2020, ballot. The board, in a 2-to-1 decision, denied petitioner's motion to dismiss an objection petition filed by three objectors who sought to remove the referendum from the ballot. Then, in another 2-to-1 decision, the board sustained the two objections that had been raised against that proposed referendum appearing on the ballot. We affirm the board as to both rulings.

¶ 2                                I. BACKGROUND
¶ 3                      A. The Proposed Referendum and Objections
¶ 4     On December 16, 2019, petitioner and supporters filed with the office of the Evanston City Clerk a petition to place the "Evanston Voter's Initiative" (EVI) on the ballot for the upcoming March 17, 2020, election. The EVI states that it is brought pursuant to article I, section 5, and article VII, sections 6(a), 6(f), 6(i), 6(m), and 11 of the Illinois Constitution (Ill. Const. 1970, art. I, § 5; Ill. Const. 1970, art. VII, §§ 6(a), (f), (i), (m), 11), and article 28 of the Election Code (10 ILCS 5/28-1 *et seq.* (West 2018)).

¶ 5     The EVI provides as follows:

> "Shall the people of the City of Evanston provide for a voter petition and referendum process for the consideration and passage of city ordinances as follows: The people of Evanston provide that the offices of City Clerk, Mayor and aldermen of the City Council have the power and duty to determine the necessary and proper procedural rules regarding the passage of city ordinances and the express duty to assist the people of Evanston in exercising their right to petition and make known their opinions regarding the consideration and passage of city ordinances. At the request of at least 25 Evanston electors, the City Clerk shall promptly cause a proposal to be drafted into ordinance form, including an official summary of the proposed ordinance. The official summary of the proposed ordinance may be introduced by a petition filed with the City Clerk and signed by a number of electors equal to at least eight percent of the total votes cast in Evanston for candidates for Governor in the preceding gubernatorial election. The procedure for filing the petition and determining its validity and sufficiency shall be established by the City Clerk, who shall make the determination of validity and sufficiency within 21 days of a petition filing.
>
> Upon the determination of a valid and sufficient petition, the City Clerk shall within one business day submit the ordinance proposed by the official petition summary on the agenda of the next City Council meeting for its consideration. The City Council shall take a record roll call vote on the proposed ordinance within 70 days of submission by the City Clerk. If the City Council does not pass the proposed ordinance within the 70 day period, the official summary of the proposed ordinance shall be submitted by

the City Clerk to the electors for their approval by referendum at the next regularly scheduled election held in all precincts of the city and held at least 70 days after referendum submission by the City Clerk. If the official summary is approved by a majority of those voting on the question, the proposed ordinance shall have the force and effect of passage by the corporate authorities of the City of Evanston unless it is disapproved by a resolution of the City Council not more than 30 days after the election?"

¶ 6    On December 23, 2019, three objectors filed a petition raising two specific objections to the EVI: "1) it present[ed] a binding referendum question in violation of State law, and 2) the question presented in the Petition (the Referendum Question) w[ould] confuse voters."

¶ 7                          B. Procedural Background

¶ 8    Petitioner filed a motion to dismiss the objectors' petition, on the basis that the objectors failed to state their interests as required by state law. After briefing, on January 15, 2020, the board voted 2-to-1 to deny the motion to dismiss. The board then considered the objections and, in another 2-to-1 decision, voted to sustain both objections and remove the EVI from the ballot. The circuit court affirmed the decision of the board, and following expedited briefing, this appeal is now before this court for review.

¶ 9                              II. JURISDICTION

¶ 10    The circuit court issued an order on February 13, 2020, denying the petition for judicial review, affirming the decision of the board, and dismissing petitioner's action for *mandamus* with prejudice. Petitioner filed a timely notice of appeal on February 18, 2020. We have jurisdiction pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 11                               III. ANALYSIS

¶ 12    We review the decision of the electoral board in this case, not that of the circuit court. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 209 (2008). There are generally three types of questions we encounter on administrative review, each subject to a different level of deference to the board's decision. *Id.* at 210. The board's findings and conclusions on questions of fact are deemed *prima facie* true and correct, and as a reviewing court, we will overturn these only where they are against the manifest weight of the evidence. *Id.* In contrast, the board's decisions on questions of law are not binding, and this court's review is "independent and not deferential." *Id.* at 210-11. Finally, on mixed questions of fact and law, where "the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard," we ask whether the board's conclusion was "clearly erroneous." (Internal quotation marks omitted.) *Id.* at 211. With these standards in mind, we now consider the board's decisions.

¶ 13                          A. Preliminary Issues

¶ 14    Before addressing the merits of the board's decision to remove the EVI from the ballot, petitioner raises two preliminary issues. First, petitioner argues that the board should have granted her motion to dismiss the objection petition and refused to consider the petition

because the objectors did not properly state their interests, as required by state law. Second, petitioner argues that in sustaining these objections, the board improperly considered constitutional and legal issues that it had no authority or jurisdiction to decide.

¶ 15        As to the first issue, petitioner relies on section 10-8 of the Election Code, which provides as follows:

> "*Any legal voter of the political subdivision* *** in which the *** public question is to be voted on *** shall file an objector's petition *** in the office of the *** local election official with whom the *** petitions are on file. ***
>
> The objector's petition shall give the objector's name and residence address, and shall state fully the nature of the objections to the certificate of nomination or nomination papers or petitions in question, *and shall state the interest of the objector* and shall state what relief is requested of the electoral board." (Emphases added.) 10 ILCS 5/10-8 (West 2018).

¶ 16        The objectors acknowledge that there is no language in their objection expressly stating their "interest" as objectors. Rather, they rely on the fact that their objection specifically states that they are "Evanston residents and registered voters" and that they object to the fact that the EVI violates state law and would confuse voters. According to the objectors, by stating their status as voters and residents and their concerns as to the legality and clarity of the proposed referendum, they have sufficiently stated their "interest" under section 10-8 of the Election Code. The board agreed and denied petitioner's motion to dismiss the petition on this basis.

¶ 17        Petitioner argues that the board made a legal error because the pleading requirements of section 10-8 are mandatory and are to be strictly construed. Petitioner cites this court's decisions in *Pochie v. Cook County Officers Electoral Board*, 289 Ill. App. 3d 585, 588 (1997)—where we held that the "residence address requirement" for filing an objection under section 10-8 of the election code is mandatory—and *Daniel v. Daly*, 2015 IL App (1st) 150544, ¶ 29—where we sustained an electoral board decision requiring an objector to appear and make a "credible showing that there [was] a good-faith basis for the filed objection." Petitioner also relies on our supreme court's recent opinion in *Jackson-Hicks v. East St. Louis Board of Election Commissioners*, 2015 IL 118929. In that case, our supreme court reversed an electoral board's decision recognizing that a mayoral candidate had an insufficient number of valid signatures on his nominating petition but, because the board found that there had been " 'substantial compliance,' " ordering the candidate's name to appear on the ballot anyway. *Id.* ¶ 7. In *Jackson-Hicks*, our supreme court held that the required number of signatures was "mandatory," not "merely directory," and that "substantial compliance" was insufficient. *Id.* ¶¶ 24, 27, 36.

¶ 18        Here, the board made clear in its ruling on petitioner's motion to dismiss that, in its view, the objectors "strictly complied with the mandatory requirement of Section 10-8 of the Election Code to state their interests as objectors by stating that they are residents and registered voters objecting for the reasons stated in their petition." Thus, there was no legal error—the board understood that objectors are required to state their interest. Rather, this was the board applying uncontested facts to legal requirements, and the issue before us is whether that application was clearly erroneous. *Cinkus*, 228 Ill. 2d at 211. In our view, it was not.

¶ 19        There is no requirement that an objector use specific language when disclosing their "interest" in an objected-to petition. Instead, the question is whether the objection makes clear on its face that the objector has such an interest. See *Pochie*, 289 Ill. App. 3d at 588 ("In our

view, whether or not an objector has standing is determined according to the face of the petition and not according to what can be found in the records of the election commission."). In this case, the interest, clear on the face of the objection petition, was the objectors' concern, as residents and voters of Evanston, that the proposed referendum was not authorized by law and was confusing. Nothing about the board's conclusion was clearly erroneous.

¶ 20    Petitioner contends that because the statute requires every objector to be a "legal voter," the board's willingness to accept these same facts as a valid statement of interest renders the statement of interest requirement superfluous. As petitioner points out, the presence of such surplusage should not be presumed. As a rule of statutory construction, each word, clause, and sentence must, if possible, be given "some reasonable meaning." *Hirschfield v. Barrett*, 40 Ill. 2d 224, 230 (1968). Section 10-8, however, says nothing about what *type* of interest an objector must have. It is merely a reporting requirement, intended to apprise the board of the objector's interest in the ballot question under consideration. An objector might be an opposing candidate or a business that would be affected by a referendum, for instance, but in many cases, the objector will simply be a resident and voter. The board did not err in relying on the objectors' statement in this case as a statement of their interest.

¶ 21    The other preliminary issue raised by petitioner is her argument that the board's power is limited to determining compliance with the procedural filing requirements for a referendum petition and that the board had no right "to make constitutional determinations as to whether the EVI meets the subject matter requirements of Section 6(f) and 11 of Article VII of the Illinois Constitution." According to petitioner, this determination is properly made only by a court and not by a municipal electoral board.

¶ 22    This is a legal issue that we review *de novo*. *Cinkus*, 228 Ill. 2d at 211. However, we find no legal support for this supposed limitation on the power of the electoral board. Petitioner bases her argument on our supreme court's statement in *Coalition for Political Honesty v. State Board of Elections*, 65 Ill. 2d 453, 463 (1976) (*per curiam*), that "[t]he determination of whether a proposed amendment meets the Constitution's requirements for amendment is a question for the courts, not for an agency." That case involved an action brought by taxpayers to enjoin the State Board of Elections from expending public funds to determine the validity of a referendum proposing amendments to the Illinois Constitution. *Id.* at 456. The plaintiffs contended that the proposed referendum was unconstitutional. *Id.* 458-59. The language from that case that petitioner relies on above was used by the court in rejecting the electoral board's contention that the only avenue open to the plaintiffs was to bring a challenge before the electoral board. Petitioner also points to a number of other cases in which legal issues concerning article VII referenda were decided in the first instance by a court rather than an electoral board.

¶ 23    But none of these cases holds, or even suggests, that an electoral board, having been presented with a referendum petition (like the EVI), brought pursuant to specific provisions of the Illinois Constitution, has no power to consider whether that petition meets the criteria of the cited provisions. While petitioner is correct that electoral boards do not have authority to declare statutes unconstitutional, they are required to decide, in the first instance, if a proposed referendum is permitted by law, even where constitutional provisions are implicated. See *Burns v. Municipal Officers Electoral Board of the Village of Elk Grove Village*, 2020 IL 125714, ¶¶ 10, 28.

¶ 24    Our supreme court recently addressed this issue in *Burns*. In that case, an electoral board refused to approve a referendum imposing term limits on elected officials on the basis that it violated section 3.1-10-17 of the Illinois Municipal Code (see Pub. Act 101-114, § 5 (eff. July 19, 2019) (adding 65 ILCS 5/3.1-10-17)), which the board read as providing that term limits may only be imposed prospectively. *Burns*, 2020 IL 125714, ¶ 5. On review, the circuit court struck down section 3.1-10-17 as unconstitutional, finding that it retroactively blocked term limits referenda that had already been approved by the voters in various municipalities. *Id.* ¶ 7. The supreme court reversed the circuit court's holding, finding that section 3.1-10-17 was constitutional. *Id.* ¶ 28. As our supreme court implicitly recognized in that case, electoral boards must necessarily apply our laws and our constitution in order to fulfill their important role in determining which candidates and issues appear on the ballot. See 10 ILCS 5/10-8, 10-10.1, 28-4 (West 2018) (designating the local electoral board as the initial forum for hearing and deciding most challenges to candidacies and referenda).

¶ 25    Article 28 of the Election Code, which sets out the relevant procedural requirements relating to referenda, makes clear that, to appear on a ballot, a referendum must be independently authorized by statute or provided for in the Illinois Constitution. *Id.* § 28-1. For an electoral board to determine if a proposed referendum is proper, it must necessarily examine any provisions the proponent of the referendum relies on to authorize it. Indeed, as the board points out in its brief, "the very fact that a [*de novo*] standard of review exists for purely legal questions necessarily implies that an electoral board may make a decision considering the law."

¶ 26    Imbedded in petitioner's argument about the electoral board's authority is her contention that the hearing the board conducted in this case did not meet the legal standards of due process and impartiality that have been required in electoral board proceedings. The specifics that petitioner offers are that one member of the board moved to sustain the two paragraphs of the objection before a discussion on the merits took place, that the chairman of the electoral board announced that counsel had prepared the board's decision and opinion before the hearing began, and that petitioner's counsel was asked questions about the wisdom of the EVI, which petitioner argues is irrelevant to the question of whether it should be on the ballot.

¶ 27    Petitioner provides no legal authority to support her claim that any of these actions violates her right to due process. The cases she cites involve motions to disqualify a board member who was also a witness at the hearing (*Girot v. Keith*, 212 Ill. 2d 372 (2004)) or who would be directly impacted by the referendum at issue (*Zurek v. Franklin Park Officers Electoral Board*, 2014 IL App (1st) 142618, ¶ 85; *Anderson v. McHenry Township*, 289 Ill. App. 3d 830 (1997)).

¶ 28    There is also little factual support for petitioner's argument. The record reflects that there was extensive discussion prior to any vote by the board. Outside counsel drafted "a whole bunch of different" opinions so that the board could select one depending on how it resolved the objections. And, while at least one board member responded to comments by petitioner's counsel extolling the virtues of the EVI, the chairman of the board repeatedly reminded both the board and the parties that the only issue before them was whether the EVI was a valid voter-initiated referendum. We see nothing to support petitioner's "due process" claim.

¶ 29    In sum, electoral boards generally have the authority to—and indeed must—determine whether proposed referenda are authorized by statute or by the Illinois Constitution. And nothing that petitioner has raised about the proceedings in this case suggest that they were improper or violated due process.

¶ 30                          B. The Board's Decision to Sustain the Objections

¶ 31        We next address the board's decision to sustain the objectors' two objections on the grounds that (1) the EVI is not a referendum authorized by law and (2) it would confuse voters.

¶ 32        In their petition, objectors cited section 28-6 of the Election Code, which specifically provides for voter-initiated referenda on local questions of public policy, but which also states that referenda under that section shall be "advisory," with "no legal effects" resulting from their adoption. 10 ILCS 5/28-6(c) (West 2018). Petitioner, however, asserts that the EVI is not subject to this limitation because it is brought under section 5 of article I (Ill. Const. 1970, art. I, § 5); sections 6(a), 6(f), 6(i), 6(m), and 11 of article VII of the Illinois Constitution (Ill. Const. 1970, art. VII, §§ 6(a), (f), (i), (m), 11); and, generally, under article 28 of the Election Code (10 ILCS 5/28-1 *et seq.* (West 2018)).

¶ 33        Several of these sources clearly provide no independent authority for a referendum like the EVI. Article I is our constitution's Bill of Rights, and section 5 of that article broadly protects the rights of the people "to assemble in a peaceable manner, to consult for the common good, to make known their opinions to their representatives and to apply for redress of grievances." Ill. Const. 1970, art. I, § 5. Nothing in section 5 specifically authorizes voter-initiated referenda. Section 11 of article VII provides generally for voter-initiated referenda but only for "[p]roposals for actions which are authorized by [article VII] or by law and which require approval by referendum." Ill. Const. 1970, art. VII, § 11. Article 28 of the Election Code, which sets out the relevant procedural requirements relating to referenda, similarly makes clear that to appear on a ballot, a referendum must be *independently authorized* by statute or provided for in the Illinois Constitution. 10 ILCS 5/28-1 (West 2018).

¶ 34        The remaining sources of authority that petitioner asserts are all provisions of article VII, section 6, of the Illinois Constitution, which sets out the powers of home rule units. Evanston, which has an elected chief executive officer and a population of more than 25,000, is automatically considered a home rule unit. Ill. Const. 1970, art. VII, § 6(a). Section 6(a) provides, in relevant part, that municipalities not meeting these statutory requirements may nevertheless "elect by referendum to become home rule units." *Id.* Because this is clearly not the sort of relief the EVI seeks, section 6(a) is not applicable here. Sections 6(i) and 6(m), furthermore, address in only general terms the powers and functions of home rule units. They provide, respectively, that "[h]ome rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive" (Ill. Const. 1970, art. VII, § 6(i)) and that "[p]owers and functions of home rule units shall be construed liberally" (Ill. Const. 1970, art. VII, § 6(m)). Neither provision makes any mention of voter referenda.

¶ 35        The parties' arguments center on section 6(f) of article VII, which provides that a home rule unit has the power, subject to approval by referendum, to (1) "adopt, alter or repeal a form of government provided by law" (the form of government clause) and (2) "provide for its officers, their manner of selection and terms of office" (the officer clause). Ill. Const. 1970, art. VII, § 6(f). In its decision, the board concluded that this section does not authorize voter-initiated referenda but merely provides for voter approval by referenda for changes first proposed by a home rule unit. The board seems to have abandoned that argument on appeal. And indeed, our supreme court made no mention of such a restriction when, in *Johnson v. Ames*, 2016 IL 121563, ¶¶ 3, 10-19, and *Lipinski v. Chicago Board of Election Commissioners*,

114 Ill. 2d 95, 97, 103-06 (1986), it extensively considered the merits of a voter-initiated referendum under section 6(f). On appeal, the board focuses on a different argument: that the powers described in section 6(f) are simply not implicated by the changes proposed by the EVI. We agree.

¶ 36    Petitioner's reliance on section 6(f)'s officer clause is, we think, easily disposed of. We agree with petitioner that the EVI provides "specific new powers and duties to the City Clerk in the executive branch *** and to the City Council in the legislative branch." Petitioner's insistence that these new duties "are significant and meaningful," however, does nothing to bring these changes within the narrow language employed in the officer clause. The EVI plainly does not "provide for" any new or different officers. Nor would its passage have any bearing on the "manner of selection" or "terms of office" of any officers.

¶ 37    We are also unconvinced that the EVI qualifies, under the form of government clause, as a proposal to "adopt, alter or repeal a form of government provided by law." Petitioner acknowledges that the EVI is not an attempt to repeal Evanston's current form of government and adopt a new one. She describes it instead as a proposal to alter or "tailor" the existing government to the special needs of Evanston residents. Our supreme court has held that proposals constitute alterations to a municipality's form of government under section 6(f) when they would effectively alter the balance of powers within that government. See *Dunne v. County of Cook*, 108 Ill. 2d 161, 162-63, 167 (1985) (concluding that a reduction in the majority required to override a veto by the president of the county board of commissioners was an alteration to the county's form of government within the meaning of section 6(f) because it changed the balance of power between the board and the president). And this court has held that proposals implicate the form of government clause when they substantially change the inherent powers belonging to one part of the government. See *Marshall v. City of Chicago Heights*, 59 Ill. App. 3d 986, 988, 991 (1978) (concluding that an ordinance depriving commissioners of the authority to hire and discharge departmental employees would result in a "substantial alteration of the commission form of government"). Petitioner argues that the EVI would substantially alter Evanston's form of government because it seeks to shift power away from the Evanston City Council and to the electorate on a matter—the consideration of proposed legislation—that is inherent in the council's legislative function.

¶ 38    However, even if we accept the premise that the EVI is a proposal for the alteration of Evanston's form of government, the novel form of government proposed is simply not one "provided by law." In *Flowers v. Moline*, 251 Ill. App. 3d 348, 350 (1993), a city passed an ordinance providing that, going forward, its council would have the power to appoint and remove the city administrator; the mayor would, with the advice and consent of the city council, appoint members of boards and commissions; and the city administrator would appoint and remove the heads of city departments. The city then passed a resolution to submit the ordinance for approval by public referendum. *Id.* The plaintiff in *Moline* argued that under section 6(f)'s form of government clause, the city was required to "choose among various forms of government provided by statute without changing these forms." *Id.* at 352. The appellate court rejected that argument, finding that it would read the word "alter" out of the form of government clause. *Id.* Noting that "the constitution requires only that the forms of government be provided 'by law,' " and that "[a] city ordinance is 'law' within the city," the court concluded that the city had indeed chosen a form of government "provided 'by law.' " *Id.*

¶ 39 Here, by contrast, no state statute or Evanston ordinance currently describes this form of government. Thus, even if the referendum proposed an altered form of government, it would not be one "provided by law," as required by section 6(f) of article VII. Following the precedent of this court in *Moline*, we hold that this voter-initiated referendum is not authorized by section 6(f) of article VII.

¶ 40 We also agree with the board that the EVI does not meet the standards for clarity and completeness established by our supreme court for referenda questions. In *Leck v. Michaelson*, 111 Ill. 2d 523, 531 (1986), the court commented on "the mischief that may result" from a proposition that initiates a change under section 6(f) "without adequately working out and articulating the details of the new scheme." It found the referendum at issue in that case— concerning runoff elections for village trustee—was "vague and ambiguous" and could not "stand on its own terms," such that those who voted in favor of it could not be said "to have approved a coherent scheme for altering the election of their officials." *Id.* at 529-30.

¶ 41 Shortly after *Leck*, the court upheld these principles in *Lipinski*, 114 Ill. 2d at 99-100. It concluded that the referendum in that case—a proposal to hold nonpartisan elections—failed to include important specifics regarding its implementation, "would have to be interpreted, supplemented and modified in order to be implemented," and thus could not be said to be self-executing. (Internal quotation marks omitted.) *Id.* at 100, 104.

¶ 42 Petitioner cites *Johnson*, 2016 IL 121563, ¶ 18, as a more recent example of the court's willingness to find that a referendum, though not "presented in optimal form," is not fatally vague or ambiguous. *Johnson*, however, does not change the standards set out in *Leck* and *Lipinski*, but merely applies them to a set of facts quite different from those presented her. The referendum in *Johnson* was a simple proposal for term limits, and the only thing missing from it—an express statement of its temporal reach—could easily be inferred from the timing of the relevant election. *Id.* ¶ 15.

¶ 43 The board in this case sustained an objection similar to those made in *Leck* and *Lipinski*, concluding, among other things, that the EVI leaves it to the city clerk to decide, at some later date, "[t]he procedure for filing [a petition-initiated ordinance] and determining its validity and sufficiency." The board also noted that the EVI fails to address possibilities like what would happen if, pursuant to the new procedures, a voter-initiated ordinance is passed by the city council but then vetoed by the mayor. These are the sort of omissions that, in our view, prevent the EVI from being truly self-executing. The board's determination that, under *Leck* and *Lipinski*, such a referendum is not proper was not clearly erroneous.

¶ 44                                         IV. CONCLUSION

¶ 45 For the foregoing reasons, we affirm the decisions of the board denying the motion to dismiss the objectors' petition and sustaining their objections to the EVI.

¶ 46 Affirmed.